**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**UNITED STATES OF AMERICA**                    **CASE NO.  6:02-CR-60036-01**

**VERSUS**                                                         **JUDGE ROBERT G. JAMES**

**LERON MICHAEL ALEXANDER (01)**

**RULING**

Before the Court is a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A),
filed by Defendant Leron Alexander.[1] The Government opposes the motion.[2] For the reasons that
follow, the motion is GRANTED.

**I.**
**BACKGROUND**

Over two decades ago, Alexander went on a seven-month crime spree in the Acadiana area
of South Louisiana. On November 6, 2000, he entered a bank in New Iberia, grabbed an elderly
female customer around the neck, placed a gun to her head, and robbed the bank of approximately
$23,000.00. Three months later he robbed the same bank, before fleeing the scene on a bicycle.
Four months after that, he carjacked a vehicle and used it to rob a bank in Lafayette.[3] Alexander
remained at large until August 6, 2002, when a Houston police officer attempted to stop him for a
traffic violation.[4] Aware that he was wanted in Louisiana for the bank robberies, Alexander
attempted to flee but crashed, disabling his vehicle.[5] He then stole another vehicle by brandishing
a firearm but again crashed. While attempting to carjack a second vehicle, Alexander was taken

---

[1] ECF No. 121 at 1-2; *see also* ECF No. 132.
[2] ECF No. 135.
[3] ECF No. 104 at 4-5.
[4] *Id.* at 9.
[5] ECF No. 121-1 at 1-2; ECF No. 132 at 3.

into custody.[6] Twenty-eight days later, Alexander was tried by a jury in Texas state court on two counts of Aggravated Robbery.[7] On the second day of trial, Alexander was convicted and sentenced to 35 years of imprisonment.[8]

On May 9, 2005, Alexander's federal trial commenced before the Honorable Tucker L. Melancon.[9] On the fifth day of trial, Alexander was convicted on three counts of bank robbery, one count of motor vehicle robbery, and four counts of brandishing a firearm during a crime of violence.[10] On August 25, 2005, a sentencing hearing was held. As to the robbery convictions, the Court imposed a sentence of 87 months, which was the bottom of the sentencing guideline range.[11] As to the firearm counts, the Court sentenced Alexander to the mandatory minimum term of 82 years, to be served consecutively to his sentence on the robbery counts, resulting in a total term of imprisonment of 89 years and 7 months.[12] Initially, the Court ordered Alexander's entire federal sentence to run concurrently with his 35-year state sentence.[13] However, after the hearing was adjourned, the Court discovered caselaw mandating that the firearms sentences run consecutively to both the federal robbery convictions and the state court convictions. The Court reconvened the hearing later that same day and modified the sentence, such that the firearms sentences were ordered to run consecutively to both the robbery sentence and to Alexander's state court

---

[6] ECF No. 104 at 9.
[7] *Alexander v. State*, 137 S.W.3d 127 (Tex. App. 2004).
[8] *Id.*; *see also* ECF No. 121 at 3.
[9] ECF No. 90.
[10] ECF Nos. 94, 97.
[11] The Court determined Alexander's sentencing guideline range to be 87 to 108 months. ECF No. 104 at 12; ECF No. 104-1 at 1; *see also* Sent. Trans. at 9-10.
[12] ECF No. 102 at 3; Sent. Trans. at 34 (imposing sentence of 7 years on Count 4 and 25 years per count on Counts 6, 8 and 10, with Counts 4, 6, 8 and 10 running consecutively).
[13] ECF No. 139 at 24, 30.

sentence.[14] The United States Court of Appeals for the Fifth Circuit affirmed, and the Supreme Court denied certiorari.

In April of 2020, Alexander completed his state sentence (as well as his federal sentence for the robbery convictions) and transferred into the custody of the Bureau of Prisons ("BOP") to begin service of his 82-year sentence for the firearms convictions. Alexander's projected release date is February 6, 2090. He now seeks a reduction in sentence, arguing "extraordinary and compelling" circumstances warrant such relief. A hearing was held on August 31, 2023, at which Alexander personally addressed the Court.[15]

## II.
### APPLICABLE LAW

As a general rule, a federal court "may not modify a term of imprisonment once it has been imposed."[16] One exception to that rule is found in 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act of 2018, which permits courts to modify an imposed term of imprisonment if, *inter alia*, "extraordinary and compelling reasons" exist.[17] Prior to the First Step Act, courts could reduce a term of imprisonment for "extraordinary and compelling reasons," but *only* if such a motion was brought by the BOP.[18] With the passage of the First Step Act, federal prisoners may now directly petition courts for a reduction of sentence. As amended, the statute grants district courts the discretion to reduce a term of imprisonment at the request of a defendant when the following criteria are met: (1) the defendant has exhausted administrative remedies; (2) extraordinary and compelling reasons warrant a reduction; (3) a reduction is consistent with

---

[14] *Id.* at 38-39, 42.

[15] *See* ECF No. 148.

[16] 18 U.S.C. § 3582(c).

[17] Such motions are generally referred to as "sentence reduction motions" or "compassionate release motions." However, "compassionate release" is a bit of a misnomer, as the statute refers to sentence reductions and modifications generally; release is not the sole option.

[18] *United States v. Shkambi*, 993 F.3d 388, 390 (5th Cir. 2021).

applicable policy statements issued by the Sentencing Commission[19]; and (4) early release is consistent with the factors set forth in 18 U.S.C. § 3553(a).[20]

In addition to permitting defendants to directly petition sentencing courts for a reduction of sentence, the First Step Act made another "monumental change" to sentencing calculations pertinent to Mr. Alexander.[21] The statute of conviction for Alexander's firearms convictions, 18 U.S.C. § 924(c), requires a seven-year mandatory minimum sentence for brandishing a firearm "during and in relation to any crime of violence."[22] A "second or subsequent conviction" results in a mandatory minimum 25-year sentence, which must run consecutively to "any other term of imprisonment."[23] In 1993, the Supreme Court held in *Deal v. United States* that when a defendant is convicted of more than one §924(c) charge in a single indictment, the 25-year mandatory minimum enhancement for "second or subsequent" convictions applies to all but the first § 924(c) conviction—a practice referred to as "§924(c) stacking."[24] For twenty-five years following *Deal*, courts "stacked" consecutive sentences for § 924(c) charges in this manner.[25] The First Step Act ended this practice. Section 403 of the First Step Act—entitled "Clarification of section 924(c)"— revised the statute by providing that the 25-year penalty is triggered only if the defendant has a prior 924(c) conviction that "has become final."[26] In other words, after passage of the First Step

---

[19] The current policy statement, U.S.S.G. § 1B1.13, applies only to motions brought by the Director of the Bureau of Prisons, and not to motions filed by prisoners on their own behalf. *Shkambi* at 392. Consequently, neither § 1B1.13 "nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *Id.* at 393.

[20] 18 U.S.C. § 3582(c)(1)(A).

[21] *United States v. McCoy*, 981 F.3d 271, 275 (2d Cir. 2020) (internal alterations omitted) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

[22] *See* 18 U.S.C. § 924(c)(1)(A)(ii).

[23] 18 U.S.C. § 924(c)(1)(C)(i), (c)(1)(D)(ii).

[24] *Deal v. United States*, 508 U.S. 129, 132 (1993); *see also U.S. v. Looney*, 532 F.3d 392, 398 (5th Cir. 2008); *U.S. v. Gomez*, 960 F.3d 173, 176 (5th Cir. 2020); *U.S. v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021).

[25] The practice actually appears to have begun in 1987 with the Eleventh Circuit's decision in *United States v. Rawlings*, 821 F.2d 1543 (11th Cir. 1987). Other circuits quickly followed suit. *See United States v. Deal*, 954 F.2d 262, 263 (5th Cir. 1992) (collecting cases), *aff'd*, 508 U.S. 129 (1993).

[26] First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194 (2018).

Act, the 25-year mandatory minimum sentence is reserved for defendants who are true recidivists and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.[27] However, the "clarification" to 924(c) applies only to persons who had not been sentenced as of the date the First Step Act was enacted.[28]

**III.**

**ANALYSIS**

**A.    Whether extraordinary and compelling reasons warrant a modification.[29]**

Alexander argues the severity of his firearms sentences, the disparity of his sentence in comparison to the sentence he would likely receive under current law, the amount of time he has already served, and his acceptance of responsibility, remorse for his crimes, and rehabilitation, collectively constitute "extraordinary and compelling reasons" warranting a reduction of his term of imprisonment. The government opposes the motion, arguing:

> [T]he government maintains that the nonretroactivity of the First Step Act to "stacking" under § 924(c) is neither extraordinary nor compelling. By allowing defendants to file their own motions for compassionate release via 18 U.S.C. § 3582(c)(1)(A), Congress did not intend to alter drastically the scope of appropriate compassionate release considerations to include sentencing inequities based on the First Step Act's change to § 924(c)'s penalty provisions, despite the First Step Act stating elsewhere that those changes are not retroactive. In passing the First Step Act, Congress expressly rejected the notion that defendants already serving sentences based on § 924(c)'s "stacked" penalty provisions should benefit from the First Step Act's changes to the law. In contrast, Congress *did* make other portions of the First Step Act retroactive, further undercutting the notion that, merely by affording defendants the procedural right to petition district courts directly for

---

[27] *See e.g.* 164 Cong. Rec. S7314 (Dec. 5, 2018) (statement of Sen. Cardin) ("Finally, the legislation eliminates the so-called stacking provision in the U.S. Code, which helps ensure that sentencing enhancements for repeat offenses apply only to true repeat offenders. The legislation clarifies that sentencing enhancements cannot unfairly be 'stacked,' for example, by applying to conduct within the same indictment.")

[28] First Step Act of 2018, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194 (2018); *see also United States v. Davis*, 139 S.Ct. 2319, 2324 n.1 (2019); *United States v. Cooper*, 996 F.3d 283, 289 (5th Cir. 2021).

[29] The government does not dispute that Alexander has exhausted his administrative remedies, and therefore the first factor for compassionate release is met. ECF No. 135 at 4.

compassionate release, Congress intended to create a new mechanism for defendants to benefit retroactively from the change to § 924(c).[30]

Stated more simply, the government contends that by declining to make the reduced penalties to § 924(c) retroactive, Congress implicitly superimposed a prohibition onto what can be considered "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)—specifically, that courts may not consider non-retroactive changes to sentencing penalties. The Court disagrees.

First, the Court finds Congress did intend to "alter drastically" the scope of compassionate release through passage of the First Step Act. From 1984 to 2018, BOP was the exclusive gatekeeper for compassionate release motions.[31] "BOP used this power sparingly, to say the least."[32] A 2013 report from the Office of the Inspector General found that "on average, only 24 incarcerated people per year were released on BOP motion," and that BOP did "not properly manage the compassionate release program."[33] The report further noted that "[o]f the 208 people whose release requests were approved by *both* a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director."[34] "As a result of this report and other criticisms, BOP revamped portions of its compassionate release procedures," but the improvements were slight.[35] "It was against this backdrop that Congress passed the First Step Act."[36] The purpose of Section 603(b) is announced in its title—"Increasing the Use and Transparency of Compassionate Release."[37] As explained by Senator Cardin, a co-sponsor of the legislation, "the bill expands

---

[30] *Id.* at 12 (citations omitted).
[31] *See* Pub. L. No. 98-473, 98 Stat. 1837, 1998-1999 (1984) ("Comprehensive Crime Control Act of 1984).
[32] *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020).
[33] *Id.* (citing U.S. DEP'T OF JUST. OFFICE OF THE INSPECTOR GENERAL, *The Federal Bureau of Prisons' Compassionate Release Program* (2013)).
[34] *Id.*
[35] *Id.* at 232.
[36] *Id.* at 233; *see also McCoy*, 981 F.3d at 276.
[37] *See e.g Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (quoting *Trainmen v. Baltimore & Ohio R. Co*., 331 U.S. 519, 528–529 (1947)) ("We also note that 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute."); *I.N.S. v. Nat'l*

compassionate release under the Second Chance Act and expedites compassionate release applications."[38]

Second, the Court disagrees with the government's position that "[i]n passing the First Step Act, Congress expressly rejected the notion that defendants already serving sentences based on § 924(c)'s 'stacked' penalty provisions should benefit from the First Step Act's changes to the law."[39] Nowhere within the First Step Act does Congress "expressly reject" the courts' ability to consider non-retroactive changes in sentencing law when determining whether extraordinary and compelling reasons are present warranting compassionate release. Congress has demonstrated that it can, and will, "expressly" limit what can, or cannot, constitute extraordinary and compelling reasons—for example, Congress has specifically stated that "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason" for purposes of compassionate release.[40] Thus, had Congress intended to "expressly" prohibit courts from considering non-retroactive amendments to statutory sentencing penalties, it seems it would have stated as much, but it did not. "[D]rawing meaning from silence is particularly inappropriate where Congress has shown that it knows how to direct sentencing practices in express terms."[41]

---

*Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[W]e have stated that the title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

[38] 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018); *see also* 164 Cong. Rec. 201, at H10362 (Dec. 20, 2018) (statement of Rep. Nadler) ("The prison reform provisions of this bill also include a number of very positive changes, such as . . . improving application of compassionate release").

[39] ECF No. 135 at 12.

[40] 28 U.S.C. § 994(t); *see also Concepcion v. United States*, 142 S.Ct. 2389, 2400 (2022) ("Congress is not shy about placing such limits where it deems them appropriate.")

[41] *Dean v. U.S.*, 581 U.S. 62, 70 (2017) (internal quotation marks omitted) (quoting *Kimbrough v. U.S.*, 552 U.S. 85, 103 (2007)).

When Congress abolished federal parole in 1984, it recognized the need for a "safety valve" to permit "later review of sentences in particularly compelling situations."[42] To that end, Congress enacted 18 U.S.C. § 3582(c)(1)(C), stating "there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include . . . cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence . . . ."[43] Contrary to the government's argument, the Court has found nothing in the legislative history of the First Step Act indicating that Congress' position on this topic has changed. Indeed, it appears (for the reasons discussed in this Ruling) that the First Step Act was passed, in part, to strengthen Congress's original intentions with regard to compassionate release.[44]

Nevertheless, the Court does agree that by declining to make the amendments to § 924(c) retroactive, Congress declined to provide relief to *all* defendants serving sentences imposed under the prior version of § 924(c). But that does not mean Congress intended to prohibit courts from providing relief to *some* defendants on an *individual* basis where extraordinary and compelling circumstances are presented. "[A]utomatic resentencing as a result of retroactive sentencing changes, which is what Congress prohibits in § 403(b), is far different from merely proffering § 403(a)'s non-retroactive changes as an argument for extraordinary and compelling reasons under § 3582(c)(1)(A).[45] Section 3582(c)(1)(A) authorizes courts to reduce a sentence "in any case"

---

[42] S. REP. 98-225, 121, 1984 U.S.C.C.A.N. 3182, 3304.

[43] *Id.* at 55-56.

[44] *C.f. Setser v. United States*, 566 U.S. 231, 242-43 (2012) ("[W]hen the district court's failure to anticipate developments that take place after the first sentencing produces unfairness to the defendant," section 3582(c)(1)(A) "provides a mechanism for relief.") (quotation marks, internal citations and alterations omitted).

[45] *United States v. Chen*, 48 F.4th 1092, 1100 (9th Cir. 2022); *see also McCoy* at 286-87 ("[T]here is a significant difference between automatic vacatur and resentencing of an entire class of sentences . . . and allowing for the provision of individual relief in the most grievous cases. Indeed, the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is *not* a specific

presenting "extraordinary and compelling reasons" warranting a reduction—not any case presenting "extraordinary and compelling reasons other than reduced statutory penalties." And because one of the original purposes of compassionate release was to empower judges to reduce an "unusually long sentence," it would indeed be odd that Congress would then require courts to ignore its recent "clarification" that stacked § 924(c) sentences were not its original intent, *and* to ignore its determination that such sentences are so unusually long that they are no longer to be mandatorily imposed.[46] In sum, the Court finds that § 3582(c)(1)(A) grants district courts the discretion to consider non-retroactive amendments to sentencing penalties on a case-by-case basis when determining whether extraordinary and compelling reasons warrant a sentence reduction.[47]

In this specific case, the Court finds extraordinary and compelling reasons are present. At age 33, Alexander was sentenced to the then-mandatory minimum term of 82 years imprisonment for firearms offenses he committed when he was 29 years old; were Alexander sentenced today, he would face a mandatory minimum term of 28 years imprisonment for those offenses, a 54-year difference. Alexander's sentence is almost three times greater than what Congress has determined is just or fair under current law.[48] As recognized by Judge Hanen, "The robberies, if committed today, are no less heinous and certainly no less dangerous."[49] Alexander is now 52 years old and is scheduled to be released on February 6, 2090, at age 118. Thus, he is effectively sentenced to

---

statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction.") (internal citations omitted); *U.S. v. Ruvalcaba*, 26 F.4th 14, 27 (1st Cir. 2022).

[46] *See* p.5, n.27; pp. 6-7 & n.38, *supra.*

[47] *C.f. Concepcion*, 142 S.Ct. at 2404 ("The Court therefore holds that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.")

[48] By entitling § 403 of the First Step Act "Clarification of section 924(c) of title 18, United States Code," it would seem Congress never intended for § 924(c) sentences to be stacked when charged in a single indictment.

[49] *United States v. Lyle*, 506 F.Supp.3d 496, 502–03 (S.D. Tex. 2020), *aff'd*, 21-20005, 2022 WL 126988 (5th Cir. Jan. 12, 2022).

die in prison. Under these circumstances, the Court finds the discrepancy between the comparative sentences is an extraordinary and compelling reason potentially warranting relief.[50] The Court therefore turns to whether the § 3553(a) factors support a sentence reduction.

**B.      Whether a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).**

In determining whether a sentence reduction pursuant to § 3582(c)(1)(A) is appropriate, courts must consider the statutory sentencing factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable."[51] Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed . . . to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[52] Alexander asserts the § 3553(a) factors support a reduction of his sentence, citing his acceptance of

---

[50] The Court notes its interpretation comports with the U.S. Sentencing Commission's proposed amendment to U.S.S.G. § 1B1.13, which will become effective November 1, 2023, barring contrary action from Congress. 28 U.S.C. §994(p). As amended, § 1B1.13 provides that "[e]xtrordinary and compelling reasons exist" under the following circumstance:

> (6)      UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*See* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited Oct. 24, 2023). Between Alexander's state custody (in which he also served his 87-month sentence for his federal robbery convictions) and the 3.5 years he has spent in federal custody for the firearms convictions, Alexander has served more than 10 years of his federal term of imprisonment.

[51] 18 U.S.C.A. § 3582(c)(1)(A).

[52] 18 U.S.C. § 3553(a).

responsibility, remorse for his crimes, the amount of time he has served in BOP custody, and his rehabilitation during incarceration. The government argues the nature and circumstances of the offense show Alexander has a propensity for violence, thereby necessitating the current sentence to protect the public from future offenses.[53]

The Court agrees with the Government that Alexander's offense conduct is concerning, and his convictions are for serious crimes. But this argument demonstrates only that Alexander's crimes require a serious punishment. The twenty-one years of incarceration Alexander has served to date reflects that consideration.[54] Further, Alexander's conduct from over two decades ago is not the only consideration before the Court. When determining whether to modify a sentence, the court "considers the defendant on that day, not on the date of his offense or the date of his conviction."[55] The United States Supreme Court has described post-sentencing conduct as "a critical part of the 'history and characteristics' of a defendant," which "sheds light on the likelihood that [a defendant] will engage in future criminal conduct."[56] Such information may also bear directly on the court's "overarching duty to 'impose a sentence sufficient, but not greater than necessary,' to serve the purposes of sentencing."[57]

---

[53] ECF No. 135 at 14-15. The government additionally argues that a reduction of Alexander's sentence would create an unwarranted disparity with other offenders serving stacked § 924(c) sentences whose terms of imprisonment have not been reduced. *Id.* at 15-16. But for the reasons discussed in subsection "III(A)," *supra*, the Court finds this argument unpersuasive. As noted, there is a significant difference between applying changes to sentencing laws retroactively to an entire category of sentences, versus allowing individual relief in the most grievous of cases.

[54] The Court notes that prior to trial, the government made an offer to Alexander permitting him to plead guilty to "at least two guns and maybe a bank robbery." *See* Trial Transcript Vol. I, pp. 6, 7. Thus, at the time of trial, it does not appear the government was of the opinion that Alexander was so dangerous that a life sentence was necessary to protect the public.

[55] *Concepcion*, 142 S.Ct. at 2396 (citing *Pepper v. United States*, 562 U.S. 476, 492 (2011)); *see also id.* at 2398 ("Federal courts . . . consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. That discretion also carries forward to later proceedings that may modify an original sentence.").

[56] *Pepper*, 562 U.S. at 492.

[57] *Id.* at 493.

Alexander has had no disciplinary incidents while in the custody of the Bureau of Prisons.[58] During his 18 years in state custody, he had only one infraction for failing to obey an order to return to his bunk during count time.[59] Alexander has taken numerous hours of course work while incarcerated, and he earned his GED in 2013.[60] Since August of 2021, Alexander has been an active participant in the Challenge Program, a Bureau of Prisons' evidence-based recidivism reduction program. The Challenge Program is an intensive cognitive-behavioral, residential treatment program "focuse[d] on the reduction of antisocial peer associations; promotion of positive relationships; increased self-control and problem solving skills; and development of pro-social behaviors."[61] The Challenge Program "places a special emphasis on violence prevention."[62] Six members of that program, including a program mentor, have submitted letters on Alexander's behalf.[63] These members discuss the positive impact Alexander has had on the group, the work he has accomplished, and his leadership and mentoring skills. The Court has reviewed all progress notes from BOP and can see within those records the growth and transformation Alexander has undergone. BOP has assessed Alexander with a "Low Risk Recidivism Level," and he currently works as a Recreational Orderly.[64] Alexander likewise appears to have had a profound positive impact on the lives and outlook of those with whom he was incarcerated in the State of Texas' penal system, as evidenced by the numerous letters of support the Court has received from Texas inmates.[65]

---

[58] ECF No. 121-3.
[59] *See* ECF No. 149 at 3.
[60] ECF No. 121-5 at 1, 6-11, 24-29.
[61] *See* FEDERAL BUREAU OF PRISONS, DIRECTORY OF NATIONAL PROGRAMS 10 (2017), https://www.bop.gov/inmates/custody_and_care/docs/20170518_BOPNationalProgramCatalog.pdf (last visited Oct. 24, 2023).
[62] *Id.*
[63] ECF No. 121-5 at 12-23.
[64] *Id.* at 2, 3.
[65] *See* ECF No. 140.

Alexander has submitted a letter to the Court, wherein he explains his mindset at the time of his offenses—that of a lost 29-year-old suffering from the disease of addiction, while trying to support a young family.[66] Alexander now has over two decades of sobriety under his belt, which is a remarkable accomplishment.[67] He expresses remorse for his victims and deep shame for his conduct.[68] He describes the profound spiritual, mental and emotional changes he has undergone during his twenty-plus years of incarceration, which he credits with saving his life from the destructive path he was on. He talks about his high school sweetheart, who stood by his side during trial and eventually became his wife, who always pushes him "to become the man that she always knew that I could become."[69] He expresses great pride that the infant son he left behind on August 6, 2002 is now "a 20-year-old college basketball player with a 4.0 G.P.A.," and that his step-daughter has grown from a child into a "remarkable young lady who will earn her Master's Degree in Psychology from LSU in just a few months, God Willing."[70] Alexander also discusses his fear that his 24-year-old son is starting down the same destructive path that has led Alexander to decades of incarceration. Alexander has done his best to maintain a parental relationship with his children during his incarceration, and he has significant support from a network of family and friends.[71] He has immediate employment opportunities upon release with his brother, his aunt, and

---

[66] ECF No. 121-1; *see also* ECF No. 121-4 at 12.

[67] ECF No. 121-4 at 12.

[68] ECF No. 121-1 at 1-3, 8; *see also* ECF No. 121-4 at 13; ECF No. 121-5 at 23; ECF No. 140 at 6.

[69] ECF No. 121-1 at 8-9; *see also* ECF No. 121-4 at 11.

[70] ECF No. 121-1 at 7, 9. The Court additionally notes the mother of that infant son has also written to the Court, describing the growth in Alexander over the last twenty years, how he has touched numerous lives, stating her belief that "he is a changed person and is ready to be a . . . devoted husband to his wife, Lisa," and offering her assistance in the event he is granted early release. ECF No. 126 at 5. The Court finds this letter speaks very highly of Mr. Alexander's character, as such a letter would be uncommon even for the un-incarcerated. It is even more impactful considering she, in a sense, was also a victim of Alexander's criminal conduct, as she has been left to raise their infant son on her own, without financial support and with diminished emotional support considering Alexander's incarceration.

[71] ECF No. 121-4 at 11; ECF No. 126.

a childhood friend, each of whom own their own businesses.[72] Alexander, a man of faith, also has a strong spiritual support system ready and waiting to support him upon release.[73] In sum, evidence of Alexander's post-sentencing rehabilitation shows that despite his lengthy sentence, he has been successful in his efforts to both educate and rehabilitate himself. This evidence, coupled with his disciplinary record while incarcerated, indicates a strong likelihood that Alexander will not engage in future criminal conduct.[74]

The Court further finds a reduction of Alexander's sentence would aid in avoiding "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."[75] Alexander's sentence is grossly disparate to the sentences imposed for similar conduct under current law. Were Alexander sentenced today, his statutory minimum sentence for the firearms offenses would be 28 years, rather than 87 years. The Court finds a sentence of 87 years far exceeds that which is necessary to achieve the ends of justice. It further finds that maintaining such a sentence would be disproportionate to the seriousness of the offense, as well as disproportionate to what Congress now deems an appropriate sentence for similar conduct. Maintaining such a sentence in light of the current version of § 924(c) does not promote respect for the law; rather, it leads the public to conclude that the criminal justice system treats similarly situated people unfairly.[76] Alexander's sentence is substantially longer than the average sentence imposed for murder. In 2022, the national average federal sentence for murder was less

---

[72] ECF No. 126 at 6, 18-19, 21-22.

[73] ECF No. 121-4 at 5, 11, 13, 35, 37; ECF No. 121-5 at 23; ECF No. 126 at 9-17.

[74] *Pepper*, 562 U.S. at 492.

[75] 18 U.S.C. § 3553(a)(6).

[76] This disparity is further compounded when one considers the disproportional rate in which Black offenders have historically been subjected to multiple 924(c) charges when compared to offenders of other races who are eligible for such charges. *See e.g.* U.S. Sent'g Comm'n, *Fifteen Years of Guideline Sentencing* at 90-91 (2004); U.S. Sent'g Comm'n, *Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* at 274 (2011); U.S. Sent'g Comm'n, *Mandatory Minimum Penalties for Firearms Offenses in the Federal Criminal Justice System* at 6 (2018).

than 22 years (specifically, 261 months).[77] Alexander was sentenced to 89 years and 7 months (i.e, 1071 months). While not intending to diminish the serious criminal conduct for which Alexander was convicted, the Court finds it extraordinary that Alexander is serving a sentence more than four times the length of today's average murder sentence for a series of bank robberies in which no one was physically injured.[78]

Finally, the Court finds a reduced sentence will afford adequate deterrence to criminal conduct, while also protecting the public from further criminal conduct. The harshness of Alexander's 89-plus-year sentence was not based on any individualized consideration of the nature and circumstances of the offense, Alexander's history and characteristics, nor the need to provide adequate deterrence or to protect the public. Rather, it was the result of prior caselaw interpreting what constitutes a second or subsequent § 924(c) conviction—a practice that was eliminated by the First Step Act. Further, Alexander has no prior criminal convictions other than those addressed in this Ruling. In light of Alexander's demonstrated rehabilitation, his age and recidivism level, the Court is unpersuaded by the government's argument that Alexander poses an ongoing danger to the public at this time.[79]

---

[77] *See* https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited Oct. 23, 2023). The average federal sentence in 2022 for kidnapping was 184 months nationally; for robbery, 106 months. *Id.*

[78] Again, the Court does not wish to minimize Alexander's offense conduct, and it recognizes these events had to be extremely traumatic to the victims. However, if the average sentence meted out for murder is four times less than the sentence Alexander received for criminal conduct in which no lives were lost, the disparity borders on the absurd.

[79] Statistically, offenders ages 50 and older, with a criminal history category of II, have a 30.8% recidivism rate. *See* UNITED STATES SENTENCING COMMISSION, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010, p. 30 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf (last visited Oct. 24, 2023). Section 924(c) offenders ages 50 and older, with a criminal history category of II, have a 31.8% recidivism rate. *See* UNITED STATES SENTENCING COMMISSION, RECIDIVISM OF FEDERAL FIREARMS OFFENDERS RELEASED IN 2010, p. 56 (2021), https://www.ussc.gov/research/research-reports/recidivism-federal-firearms-offenders-released-2010#:~:text=Over%20two%2Dthirds%20(69.0%25),were%20rearrested%20for%20similar%20crimes (last visited Oct. 24, 2023).

## IV.
### CONCLUSION

After consideration of the parties' arguments, 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act, the factors set forth in 18 U.S.C. § 3553(a), and the length of imprisonment Alexander has already served, the Court finds a reduction of Alexander's term of imprisonment for his firearms convictions is warranted. Specifically, the Court finds a total sentence of ten (10) years is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and protect the public from further criminal conduct. Such a sentence is a substantial prison term, commensurate with the crimes Alexander committed. Accordingly,

IT IS HEREBY ORDERED that the Motion for Sentence Modification is GRANTED, and the Court will issue an amended judgment reducing Defendant's term of incarceration for his firearms convictions to ten (10) years total.[80] Except as modified above, all other provisions of the Judgment imposed on August 25, 2005 (and amended on September 28, 2005), REMAIN in effect.

SIGNED this 25th day of October, 2023.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[80] The firearms convictions were labelled as counts 4, 6, 8 and 10 in the Superseding Indictment and the Original Judgment. ECF Nos. 76, 102. They were renumbered as counts 2, 4, 6 and 8 in the Amended Judgment. ECF No. 105; *see also* ECF No. 103.